IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE ARTHUR SNEED, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil No. 3:05-CV-2032-R |
| HUNT COUNTY MEDICAL | § | |
| DEPARTMENT, ET AL. | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Gale Piearce's Motion for Summary Judgment (filed September 6, 2006) (Dkt. No. 40), Plaintiff Willie Sneed's Response (filed October 12, 2006) (Dkt. No. 45) and Piearce's Reply (filed October 17, 2006) (Dkt. No. 46). After careful consideration of all parties' submissions and the law applicable law to the issues before the Court, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Willie Arthur Sneed sued Hunt County Medical Department, Nurse Gale Piearce (Piearce), Lieutenant Snead (Snead), and Sergeant Mary Brunner (Brunner) alleging violations of his constitutional rights under the Eighth Amendment. Sneed was incarcerated in the Hunt County Jail during the events forming the basis of his complaint. Piearce is a nurse at the Hunt County Jail, Snead is her supervisor and Brunner is an officer at the jail.

Sneed submitted an Inmate Medical Request form complaining about his tooth on March

21, 2005.  On April 5, 2005 Sneed visited Dr. Glass for a dentist appointment.  Dr. Glass did not extract Sneed's tooth because his blood pressure was too high.  Dr. Glass told Sneed that he would need to see a doctor to change or adjust his medication to lower his blood pressure to a normal range of 130/90 or less.  Later that day, Piearce called Dr. Glass to follow up, and he told her that Sneed would need to see a doctor concerning his blood pressure before the tooth could be pulled.  For the next few months, the medical staff, at Piearce's instruction, regularly checked Sneed's blood pressure.

On April 7, 2005, Piearce told Sneed that Dr. Glass said he had to see a doctor to change or adjust his blood pressure medication before another dentist visit would be scheduled.  Sneed said he did not want to see a doctor about his blood pressure because he believed he could lower his own blood pressure without seeing a doctor.  He believed that his current blood pressure medication was adequate and he did not want to pay for any prescribed medication. (Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 45)).  At no time did Sneed see a doctor about his blood pressure or his blood pressure medication.

During the next few months, the medical staff at the jail regularly checked Sneed's blood pressure and out of fifteen readings, his blood pressure was 130/90 or less only one time.  Sneed made numerous requests to see the dentist for a tooth extraction and made notations of increased pain and discomfort.  Sneed did not make any requests to see a doctor to change or adjust his blood pressure medication as Dr. Glass and Piearce  instructed.  On September 22, 2005, Sneed complained that the tooth broke causing pain and bleeding.  No one at the jail scheduled another dentist appointment for Sneed.

On October 13, 2005, Sneed filed suit against Defendants for violations of his

constitutional rights under the Eighth Amendment. (Dkt. No. 1). On January 30, 2006, Judge Kaplan dismissed Sneed's claims against Snead and Brunner for failure to state a claim. (Dkt. No. 15). The only claim remaining is the alleged violation of his constitutional rights for lack of adequate dental care against Piearce. On September 6, 2006, Piearce filed a Motion for Summary Judgment on all of Sneed's remaining claims. (Dkt. No.40).

## II. ANALYSIS

Sneed asserts that Piearce violated his constitutional rights and is not entitled to qualified immunity because Piearce was deliberately indifferent to Sneed's medical needs. Piearce claims that she is entitled to qualified immunity and summary judgment because Sneed has failed to demonstrate a violation of a clearly established constitutional right. The Court grants Piearce's Motion for Summary Judgment because Sneed has presented insufficient evidence to establish a constitutional rights violation by Piearce.

**A.   Summary Judgment Standard**

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed 'to secure just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper and the moving party is entitled to judgment as a matter of law when no genuine issue regarding any material fact in the case is present. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322; *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact through relevant portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any. *Celotex*, 477 U.S. at 323; *Calbillo v. Cavender Oldsmobile,* 288 F.3d 721, 725 (5th Cir. 2002). Once the movant has met its initial burden, the nonmovant must show that there is a genuine issue for trial by presenting specific facts, by affidavits or otherwise. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "If the evidence [proffered by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 2549-50 (1986). However, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See id.* at 255.

The Court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find by a preponderance of the evidence that Sneed is entitled to a verdict. *Anderson*, 477 U.S. at 249-50. In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A "sufficient showing" consists of more than a scintilla of evidence in support of the moving party's position. *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise an issue as to existence of an essential element).

**B.     Qualified Immunity Standard**

The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). The threshold question is whether, on the plaintiff's version of the facts, the officer's conduct violated a currently-existing constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per 17 curiam) (citing *Saucier v. Katz,* 533 U.S. 194, 200 (2001)).  If the plaintiff fails to allege a constitutional violation, then the defendant is entitled to qualified immunity and the court need not inquire any further. *Saucier*, 533 U.S. at 201. If, however, the plaintiff has shown a violation of a constitutional right, the court must then determine whether the defendant's actions were "objectively reasonable" in light of "clearly established law" at the time of the alleged violation. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

**C.     Sneed Produced Insufficient Evidence of a Constitutional Rights Violation**

Sneed has produced insufficient evidence that Pierce's actions violated his constitutional rights. Two elements must be satisfied to show that a prison official violated a prisoner's Eighth Amendment right: the alleged deprivation is "sufficiently serious" and a prison official is deliberately indifferent. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  In this case, Pierce's failure to make a dentist appointment for Sneed was neither sufficiently serious, nor did Pierce's

actions constitute deliberate indifference.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes certain duties and obligations on prison officials. *Id. at.* 832. Those duties and obligations include "humane conditions of confinement, ...adequate food, clothing, shelter, and medical care, and...reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 526 - 527 (1984)). Clearly the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). As part of the duty to provide adequate medical care, the denial of dental care may give rise to a constitutional violation. *See Del Muro v. Federal Bureau of Prisons*, 2004 WL 1542216 *3 (N.D. Tex. 2004) (citing *Farrow v. West*, 320 F.3d 1235, 1243-44 (11th Cir. 2003)). However, to prove a constitutional violation, the action must be sufficiently serious and the prison official must be deliberately indifferent. *Farmer,* 511 U.S. at 834.

"Deliberate indifference" is established where a prison official subjectively knows that an inmate faces "a substantial risk of serious harm" but nevertheless "fails to take reasonable measures" to protect the inmate from risk. *Id.* at 847; *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Deliberate indifference as applied to medical care can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle* 429 U.S. at 104-105. This delay, however, "can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Furthermore, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's

**MEMORANDUM OPINION AND ORDER – PAGE 6**

disagreement with his medical treatment absent exceptional circumstances." *Gluzman v. U.S.*, Slip Copy, 2006 WL 2713785 *2-3 (N.D. Tex. 2006); *see also Watson v. Coulson,* 2003 WL 1994345 *1 (N.D. Tex. 2003), *Estelle v. Gamble*, 429 U.S. 97, 107-08 (1976), *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991), *Norton v. Dimzana*, 122 F.3d 286, 292 (5th Cir. 1997). "As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights." *Watson*, 2003 WL 1994345 *1 (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982)).

While denial of dental care may form the basis of constitutional rights claim, when a prisoner refuses recommended medical treatment, no violation exists. For example, in *Sanders v. United States*, the Fifth Circuit determined that a prisoner's own refusal to undergo dental extractions [did] not rise to a constitutional violation. 438 F.2d 918, 919 (5th Cir. 1971). In that case, the prisoner complained of inadequate medical treatment, but occasionally the prisoner refused to take the prescribed medication because he felt that he was best able to determine the medications he should take. *Id.* The prison officials were not held responsible for the prisoner's pain and suffering given that the prisoner refused the recommended treatment. *Id.* The Fifth Circuit "held that it was the plaintiff's choice to forego extractions and therefore, he could not establish that prison official acted arbitrarily in regard to his dental needs.*" Del Muro*, 2004 WL 1542216 *4 (quoting *Sanders*, 438 F.2d at 919). Thus, because the ultimate decision regarding the recommended treatment was the prisoner's, the Fifth Circuit concluded that there was no constitutional rights violation. *Sanders, 438* F.2d at 919.

The evidence in this case does not support deliberate indifference. Piearce discussed Sneed's dentist visit with Dr. Glass, told Sneed that he needed to schedule a doctor's

appointment to change or adjust his blood pressure medication before another dentist visit, and told the jail medical staff to regularly monitor Sneed's blood pressure. Under *Estelle* and *Farmer*, Sneed must show that there was a serious risk and that Piearce was aware of the risk but deliberately disregarded that risk. Sneed refused to see a doctor about his blood pressure medication as instructed and his blood pressure only once fell within Dr. Glass's requirement. Even if Dr. Glass never told Sneed to see a doctor about the medication, at most, the evidence supports a disagreement between Sneed and Piearce regarding the proper medical treatment. Therefore, Sneed has not presented sufficient evidence to support a claim against Piearce.

Because Sneed fails to allege a constitutional violation, Piearce is entitled to qualified immunity and the court need not inquire any further. *Saucier*, 533 U.S. at 201.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is hereby **GRANTED.**

It is so ORDERED.
ENTERED: December 15, 2006.

_____
JERRY BUCHMEYER,
SENIOR U.S. DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS